UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JUN - 7 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ANDREW MAGUIRE )
6508 Pyle Road )
Bethesda, Maryland 20814 )
)
    Plaintiff )
)
v. ) Civil Action No.
) CASE NUMBER 1:06CV01048
PEOPLE FOR THE AMERICAN WAY )
2000 M Street, N.W. #400 ) JUDGE: Emmet G. Sullivan
Washington, DC 20036 )
Serve: Dominic Ucci ) DECK TYPE: TRO/Preliminary Injunction
)
    Defendant ) DATE STAMP: 06/07/2006

JURY ACTION

## VERIFIED COMPLAINT

### I.

### Nature of the Case

1. This is a case of age discrimination in employment brought under the District of Columbia Human Rights Law. In addition, plaintiff seeks damages for breach of contract/promissory estoppel, and wrongful discharge.

### II.

### Jurisdiction and Venue

2. Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. Section 1332 (diversity).

3. The amount in controversy exceeds the sum or value of $75,000.

4. Venue is proper in the District of Columbia pursuant to 28 U.S.C. Section 1391(b) since defendant's principal place of business is in the District of Columbia.

1

### III.

### Parties

5. Plaintiff Andrew Maguire is a resident of the State of Maryland.

6. People for the American Way is a non-profit District of Columbia corporation with its principal place of business at 2000 M Street, N.W., Washington, D.C. 20036.

### IV.

### Factual Allegations

7. People for the American Way was created to: "to meet the challenges of discord and fragmentation with an affirmation of 'the American Way.' By this, we mean pluralism, individuality, freedom of thought, expression and religion, a sense of community, and tolerance and compassion for others. People For the American Way will reach out to all Americans and affirm that in our society, the individual still matters; that there is reason to believe in the future - not to despair of it - and that we must strengthen the common cords that connect us as humans and citizens."

8. "The long term agenda of People For the American Way is broad. It includes reducing social tension and polarizations, encouraging community participation, fostering understanding among different segments of our society, and increasing the level and quality of public dialogue. As an educational institution, we shall communicate with the American people through printed materials, radio, television, public lectures and discussions."

9. People for the American way was created to "gather information, analyze it, and distribute our findings to the public in a manner that provides for full and fair exposition on the issues. Our highest purpose is to nurture a national climate that

encourages and enhances the human spirit rather than one which divides people into hostile camps."

10. "By educating the American people and raising their level of understanding about the basic tenets by which our society is sustained, People For the American Way seeks fulfill its mission."

11. PFAW claims that it stands for civil rights and equal rights, but does not apply those standards to all of its own employees.

12. At PFAW an unreasonable, unprofessional, and unlawful pattern of marginalizing, undermining, and discriminating against plaintiff, who is between the ages of 40 and 70, emerged.

13. The PFAW Personnel Manual (1997 Edition) provides that "It is our policy to evaluate employee performance on a regular basis." Section IV.A.

14. The PFAW Personnel Manual provides "As employees perform their duties on a daily basis, their supervisor should provide continuing guidance." Section IV.A.

15. "Each staff member will be evaluated by his/her supervisor at the end of the three-month introductory period."

16. "Each staff member will be evaluated at the end of six months of employment, and at the end of the first year of employment."

17. These evaluations are to be in writing. "The personnel evaluation form will be used for these evaluations…The Director of Personnel is responsible for the timely distribution and completion of evaluation forms." Section IV.A.

18. Plaintiff was extremely well-qualified for the position of Vice President for Institutional Development, a strategy, fund-raising, and institution building (internally and *vis a vis* external actors and audiences) position.

19. Plaintiff was born on March 11, 1939 and is currently 67 years of age.

20. Plaintiff obtained his B.A. degree in religion at Oberlin (Ohio) College in 1961 and received his Ph.D. in government from Harvard University in 1966.

21. Plaintiff served as an advisor on political and security affairs, United States Department of State, 1966-1969. Plaintiff was a member, United States Delegation to the United Nations General Assembly for five sessions while with the United States Department of State.

22. Plaintiff was director, for the Mayor of the City of New York, of a regional urban development program 1969-1972.

23. Plaintiff served as a consultant, National Affairs Division, Ford Foundation, 1972-1974.

24. Plaintiff has extensive experience with fundraising. He was elected as a Democrat to the Ninety-fourth, Ninety-fifth and Ninety-sixth Congresses (January 3, 1975-January 3, 1981). Plaintiff was a candidate for nomination to the United States Senate in 1982. He raised significant funds for these races and also for a not-for-profit international development organization, EnterpriseWorks Worldwide, where he served as president, 1990-2002.

25. Plaintiff served as vice president for policy at another not-for-profit organization, World Resources Institute, 1984-1987, where he was also involved in marketing and fundraising.

26. Plaintiff was hired by PFAW as a consultant as of May 1 for a three month consultancy as a Senior Advisor to the President.

27. Plaintiff's supervisor was Ralph Neas, (then age 58) the President of PFAW.

28. After working for three months as a consultant, plaintiff was hired into a newly expanded position of Vice President for Institutional Development, a full time post that was to include working closely with the President of PFAW and the Board on fundraising strategy, building out and managing the Development Team, and working from this Vice President position to integrate development planning and execution (previously isolated and ineffective under a succession of four or five development directors in as many years) more closely with other units in the organization, e.g., program, internet communications, regional offices, etc.

29. Plaintiff also, at the request of Chief of Staff Marge Baker, undertook to negotiate and manage a contract with an internet fundraising consulting firm, Plus Three, and to join a strategic planning team led by the COS in a goals setting effort undertaken for 2006 and still underway.

30. Plaintiff was assured by Mr. Neas that he had his confidence and would have the support and cooperation and leverage within the organization to apply his experience and skills toward accomplishing these objectives.

31. A first step towards meeting these objectives would be the establishment of a new Board Development Committee with which plaintiff would work closely.

32. Despite assurance from Mr. Neas, no Board Development Committee ever was established. As of May 25, 2006, more than one year after this commitment to plaintiff was made, no such committee had been established.

33. After first stating that plaintiff would be closely involved, Mr. Neas excluded plaintiff from any and all discussions/actions with New York Board members re a new regional director and fundraising.

34. An opportunity arose for plaintiff to spend an evening with New York Board members and donors at a wine tasting fundraising event -- which would have permitted plaintiff to get a meaningful start in NY -- but plaintiff was informed that he would need to pay the $2,000 ticket price because the host, a Board member, insisted that all attendees pay, and this made it prohibitive for plaintiff to attend.

35. Promptly thereafter, Dominic Ucci, (then age 54) PFAW's Executive Vice President/CFO, attended the same event without paying for a ticket.

36. As of May 25, 2006, no new New York director has been hired and it has been impossible to schedule major fundraising events in New York or move forward in any meaningful way with expanding PFAW's fundraising base there.

37. Anastasia Staten (age 26) was promoted to Director of Major Gifts soon after plaintiff arrived at PFAW.

38. Despite repeated attempts to elicit a planning proposal for a major gifts program for PFAW that could be discussed, refined, and acted on, over many months Ms. Staten produced only a few outlined notes about what she was doing for Mr. Neas concerning the major donors over whom he exercised exclusive control, and special Spirit of Liberty events in L.A., D.C., and Miami (that raise PFAW's profile but little money after costs are deducted), which Ms. Staten worked on almost exclusively with Executive Vice President/COO Carol Blum.

6

39. Re-introduction of a lapsed President's Council was on Ms. Staten's list of things to do for six months but remained undone until after a first-rate Major Gifts Manager was hired. This staff person did almost all the work on this project, including coordinating it with plaintiff, but resigned after several months of frustration with Ms. Staten, Mr. Neas, and the "chaos" of PFAW's management practices, to take a senior fundraising job at another, larger organization

40. Despite repeated requests over a number of months for lists of donors who might be upgraded, and lists of prospects that plaintiff might selectively contact, he was told by Ms. Staten, supported by Mr. Ucci and Mr. Neas, that hundreds of major donors were to be handled by Mr. Neas only, that his mailings of PFAW information and his relatively frequent personalized (often by Ms. Staten) notes with asks to lists of major donors were separate and apart from anything else and took priority at all times, and that with regard to new prospect lists available from a variety of sources, there were no phone numbers for these prospects, these could not easily be acquired, and/or they already received repeated solicitation mailings from PFAW, which had been generally unproductive.

41. PFAW did not have in Ms. Staten and the understaffed major gifts unit, and failed to acquire, new donor research and prospecting capability of any sophistication, and without this essential fundraising infrastructure plaintiff was unable to deploy his recognized skills in donor contacts and asks.

42. Outside fundraising consultants were hired by Mr. Neas on a continuous basis, but they reported only to him and plaintiff was systematically excluded from fundraising strategy, planning, and execution throughout the period of plaintiff's employment.

7

43. An ambitious agreed and budgeted plan for 2006 membership recruitment and dramatic expansion of PFAW's small donor fundraising base was months behind schedule through 2006 up to and including May 25 because Mr. Ucci failed to provide postage and other substantially overdue payments to vendors while shifting available funds to other purposes.

44. A proposal by plaintiff to fill a key and agreed upon foundation fundraising position was rejected by Mr. Ucci and Mr. Neas, and filling a proposed planned giving position was placed on indefinite hold.

45. The Director of Development Operations, Kristen Smith (age approximately 30), promoted into the position at the suggestion of plaintiff who appreciated her data management expertise and her knowledge of PFAW operations, took it upon herself without consultation with plaintiff to criticize to Mr. Ucci and others plaintiff's supervision of her work, a gambit that was encouraged and supported by Mr. Ucci and ultimately by Mr. Neas as well, and one that contradicted plaintiff's career-long reputation as a sensitive and supportive manager who devolves authority and inspires and encourages those who work for and with him.

46. Every program or plan to raise funds proposed by plaintiff had to have Mr. Neas' and/or Mr. Ucci's approval and these approvals often were withheld despite the fact that Mr. Neas and Mr. Ucci had mandated to plaintiff and the development staff ambitious revenue goals for the organization for 2006 with a large portion of responsibility for achieving these placed on the development team. Yet, Mr. Neas and Mr. Ucci systematically failed to provide plaintiff with the means to do the job that he had been hired for effectively and in a timely manner. Roadblocks were placed in

plaintiff's way continuously. It became clear that Mr. Neas and Mr. Ucci were not prepared to build out the necessary elements of a proper development team and set of fundraising programs as other organizations have found they must do to be successful in achieving revenue viability for an organization that seeks to grow over the longer term.

47. Nevertheless, in a few months' time plaintiff personally and through organizing and overseeing several new initiatives, raised hundreds of thousands of dollars for PFAW.

48. Plaintiff has also, to the benefit of PFAW, plugged significant gaps in maintaining PFAW's profile and fundraising potential in Chicago where there has been no effective senior leadership and no regional director in place up to and as of May 25, 2006.

49. Upon his termination on May 25, 2006 Mr. Maguire was advised that he was being terminated without cause, that "it wasn't working," that it was "not a good fit."

50. The person(s) announced as outside consultants to be hired by People for the American Way to replace in part plaintiff's several roles with the organization are substantially younger than plaintiff.

51. Plaintiff, upon information and belief, understands that PFAW is hiring Mary Pat Bonner (age 33) and Jennifer Swanson (age 37) to perform in part the work that was performed by plaintiff as Vice President for Institutional Development.

## V.

**First Cause of Action: Violations of the District of Columbia Human Rights Law**

52. Plaintiff incorporates by reference paragraphs one through 51, inclusive.

53. AT PFAW both subordinate staff and top executives (Mr. Neas and Mr. Ucci), through their acquiescence, encouragement, and otherwise, violated the District of Columbia Human Rights Law by discriminating against plaintiff because of his age in the terms and conditions of his employment.

54. People for the American Way willfully violated the District of Columbia Human Rights Law by discriminating on the basis of age knowingly and/or with reckless disregard for the law.

55. The District of Columbia Human Rights Law Subchapter II, Sec. 1-2512, outlaws discrimination in employment based upon "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matriculation, or political affiliation." (D.C. Code Ann. § 1-2501 (1987 & Supp. 1993).

VII.

**Second Cause of Action:  Breach of Contract/Promissory Estoppel**

56. Plaintiff incorporates by reference paragraphs one through 55, inclusive.

57. People for the American Way agreed and promised plaintiff that he would be evaluated in writing three months, six months, and one year after beginning his employment, and that he would have the opportunity to participate in those evaluations through review of all written evaluation material and through a self-evaluation for which a separate section of PFAW's evaluation form is provided.  This was not honored..

58. People for the American Way failed to evaluate plaintiff's work performance in writing, or in any other appropriate or comprehensive way, at any time during his employment with the organization.

59. People for the American Way breached its agreement and promises to plaintiff to evaluate his work performance in writing at three, six and twelve months after being employed by the organization.

60. People for the American Way breached its promises to encourage, support, and provide resources for plaintiff's proposals and plans for developing a fundraising program consistent with those that are standard at other similar organizations.

61. Plaintiff was damaged as a result of these breaches as it became very difficult to raise additional funds for PFAW when Mr. Neas and Mr. Ucci routinely refused to approve fundraising staffing and initiatives proposed by plaintiff.

62. Plaintiff suffered damages as a result of PFAW's failure to give employee evaluations while simultaneously not allowing him to perform his job, as had been agreed to by Mr. Neas, Ms. Baker and Mr. Ucci, to anything close to its full potential based on plaintiff's experience, demonstrated skills, and sound plans for fundraising at PFAW because of the roadblocks that were put in his path by two young staff who ostensibly (but not de facto) reported to him and by senior management, specifically Mr. Neas and Mr. Ucci, who cooperated with these more junior staff without consultation with plaintiff and placed roadblocks of their own in plaintiff's path.

IX.

### Request for Relief

WHEREFORE, plaintiff requests that this Court enter a judgment against defendant:

A. Enjoining People for the American Way from terminating plaintiff, from terminating plaintiff's health insurance and from taking any other action against plaintiff;

B. Ordering plaintiff to be reinstated with back pay;

C. Awarding plaintiff damages for breach of contract and promissory estoppel;

D. Awarding plaintiff attorneys' fees and court costs;

E. Awarding plaintiff liquidated damages pursuant to the District of Columbia Human Rights Law; and

F. Granting such other relief as this Court may deem just and proper.

Subscribed and sworn to before me this 6th day of June, 2006:

*[signature]*
ANDREW MAGUIRE

*[signature]*
NOTARY PUBLIC

*[signature]*
JOEL D. JOSEPH
LAW OFFICES OF JOEL JOSEPH
7272 Wisconsin Avenue, Suite 300
Bethesda, MD 20814
Attorney for Plaintiff

Denise M. D'Amico
Notary Public
State of Maryland
County of Montgomery
My Commission Expires January 28, 2008

12

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution of the United States, plaintiff demands a trial by jury.

_____

JOEL D. JOSEPH
LAW OFFICES OF JOEL JOSEPH
7272 Wisconsin Avenue, Suite 300
Bethesda, MD 20814
Attorney for Plaintiff